The Chancellor.
This is a controversy between two very respectable and responsible persons of the county of Warren. It respects the right to water, which the complainant insists should flow to his land, for watering his cattle, and which right is denied him by the defendant. Difficulties of this kind are generally serious in their character, and often embarassing in their adjustment. A stream of water is not only of the highest utility to a farmer, but it is also pleasant and cheerful to the eye. The case involves no privileges connected with a mill or mill seat; the stream is small, and its only use is for domestic and agricultural purposes. I have felt it my duty to look with care into this case, as well from my great respect for the feelings of the parties, who I perceive have it much at heart, as to satisfy them that the conclusion to which I have come has been attained upon sound and well established principles.
The complainant, by his bill, charges, that for many years he owned and occupied a farm of one hundred acres, about half a mile south of the defendant’s, and which being destitute of water, proved a severe inconvenience. That an opportunity presenting itself, in the year eighteen hundred and thirty-five, he purchased the farm lying between him and the defendant, of one hundred and twenty-two acres, and that a principal inducement was to posess himself of a stream of water running from the defendant’s land. That the defendant is the owner and in possession of the adjoining farm, over which there is an *243 ancient water-course flowing from the Spruce Run turnpike, on to the complainant’s land. That this stream was flowing there when the complainant purchased the last tract, commonly called the Oreveling farm, and was always theretofore accustomed to flow in its natural channel.
The complainant, states that he has bought other lands, and repaired and improved the buildings ; and especially in reference to this water, has put up long lines of board fence, and made lanes on his place leading to it, as a permanent watering place for his horses and cattle. The stream is said to have disappeared for a short time in a sink-hole, but by ditching along the line of the stream and the inflow of the water, it again revived and returned to its ancient channel. The use of this water is declared to be indispensable, and the want of it to render tlie •complainant’s farm and improvements comparatively worthless.
After thus describing the situation of the parties, and their lands, the grievances are thus stated: — That the defendant, about two years before, dug a ditch near the partition line between the two farms of the complainant and defendant, and so near to the place where the water run, as to endanger its breaking awray and carrying it down the new ditch on the defendant’s side; and observing that such would be the result, the complainant sent to the defendant and caused him to fill it up with stones and turn the stream back. That upon doing this, he informed the complainant of his determination to take the water from its channel near the turnpike road, and lead it down to his house, and that he has actually commenced digging a drain for that purpose, and dammed np the ancient water course, and turned a portion of the water into such new •drain.
The prayer of the bill is, that an injunction may issue, restraining the defendant from thus diverting this ancient stream of water. The bill being verified, an injunction was ordered, in conformity with its prayer. The terms of the injunction are broad enough to cover any diversion of the water, but from the scope of tbe bill, it is quite manifest, it was only intended *244 to apply to the water flowing from the turnpike, and not to the. ditch near the partition line. That had already been put ai rest, by the act of the defendant, in turning back the stream,, audit was doubtless introduced into the bill to show the aggravated character of the defendant’s conduct.
To this bill the defendant answered, and has placed his defence on the broad ground, that the stream in question is not-an ancient water-course, and therefore the complainant has no-right to it. The defendant states, that he purchased his farm and moved on it in the year eighteen hundred and thirty-one, and that at that time this stream did not run on his land at all, except in times of freshet, when it would flow not only on to-him, but his neighbors. That the stream, prior to that time,, came down no farther than Wyer’s farm, which is the third farm above his, and there disappeared in a sink-hole. That in the year eighteen hundred and thirty-two, observing his neighbors above 'ditching, he dug a ditch across his own land, and. pushed the water through the fence on the adjoining farm, now owned by the complainant. The defendant admits that he dug i ditch along the partition fence, but denies that it was done-from any improper motive, but to carry off the surplus water in time of- freshets. He also admits the digging of the ditch near the turnpike, and his intention to turn the water down to his house for domestic purposes, and to lead it through drains to-water his meadows. The defendant further complains, that just before the service of the injunction, the water was turned back into the former channel; and he insists upon his right to-make the ditch, and to use the water in the way proposed.
This statement shows the. position of the case, and that the-parties are at issue on a question of legal right. There has-been a mass of evidence taken, unexampled in the court, and. the cause is brought to a final hearing on the merits.
' The first consideration that presents itself, and which was= fully discussed on the argument, relates to the power of a court of equity over such a case.
Upon the case made by the bill, I had no doubt at the time,. *245 and have none now. The jurisdiction of this court is of a preventive character in cases of waste and nuisance, and comes in aid of the courts of law. It has long been exercised, and with great usefulness. It is founded on the necessity created by an irreparable mischief, and the inadequacy of pecuniary compensation.
The right to have water flow in its accustomed channel, is an acknowledged principle, for a breach of which the party injured may have his redress by suit at law, and in many cases by injunction. No mere pecuniary compensation will answer the ends of j ustice. and if the design is discovered in time, before the nuisance is carried into effect, may and should be re strained. The elementary treatises are full of cases of thir character and they will be found sustained by authority : Fon blanque’s Equity, 3, in notes; Angel on Water-courses, 75 1 Vesey, sen. 476, 543; 2 Vernon, 390; 2 John. Chan. 164; Saxton, 192.
But it was not so much against the general jurisdiction oi the court, that the objection is raised, as to its exercise, when the defendant, as in this case, denies the complainant’s right It is the province of this court, as the defendant’s counsel insist not to try this right, that belonging alone to a court of law, bul to quiet the possession whenever that right has been ascertained and settled. If it be intended to say, that a defendant setting up this right by his answer, thereby at once ousts this court of jurisdiction, I cannot assent to it, for it would put an end very much, to the exercise of an important branch of the powers of the court. This question of right to water is often a very debateable matter, and it would be quite easy for a defendant to ■satisfy his conscience in his own favor. If it be intended to go no further than that it is a question which should be sent to law in cases of doubt, and often should before injunction be first there established by trial and judgment, then I agree to the proposition. A long enjoyment by a party of a right, will entitle him to restrain a private nuisance, even though the defendant may deny the right, and the court will exercise its discre *246 tion whether to order a trial at law or not, always inclining to-put the case to a jury if there be reasonable doubt. In the-case cited from 2 John. Chan. the chancellor refused to send •the question of right to be tried at law, saying it was clear-enough ; and a case is cited from Prec. in Ch. 530, where a plaintiff who had long been in possession of a water-course, was-quieted by injunction, though he had not established his right at law.
"We must then look at the case on its merits, and there are a few plain and well settled principles that must control it.. Water must be allowed to run in its accustomed channel, and may be used by all the riparian owners through whose lands-it may run, but it must be so used as not to deprive those lower-down on the stream, of its use in the way which they have-been accustomed to use it. There is, however, a length of time,, and which in England and in this state is twenty years, in, which any particular use of water, or diversion from its accustomed channel, if undisturbed and uninterrupted, will raise-the presumption of a grant. It is said, too, and upon the same-reason, that as twenty years’ possession will give a right, so a nonuser for the like term will put an end to it. This subject, will be found very clearly discussed in 3 Kent's Com. 353, and in Angel on Water-courses, 70. What constitutes a watercourse, should also be well settled, and must be kept in mind,, in looking into the evidence in this case. Many of the witnesses evidently call a declivity into which the water must run,, if there be water, a water-course, and all their opinions are expressed upon that idea. One of them, upon being asked what he-meant by a water-course, says, where it would run if there was water to run ; others say they consider it an ancient water-course.' because it is a place where in a freshet it would run. This is the-prevailing view taken by the witnesses, and they are correct, so-’ far as they describe the course that the water would flow ; but when speaking of a water-course, something more is intended. There must be water as well as land, and it must be a stream-usually flowing in a particular direction : it need not flow con *247 tiimally; many streams in tbe country are at times dry. There is a wide difference, however, and the distinction is well known, between a regular flowing stream of water, -which at certain seasons is dried up, and those occasional bursts of water, which in times of freshet or melting of snows, descend from the mountains and inundate the country.
Carrying with me these principles, and which I believe indisputable, I have looked into this evidence, and after some labor, come to a conclusion upon it, entirely satisfactory to my own mind. In sncb a volume, it could not be otherwise, than that there should be much discrepancy. It will always be so where it depends on matter of opinion, or where the occurrence! ire of ancient date. And yet I am not disposed to think, aftei x second reading, that there is as much actual difference as I nipposed, though there is some of the evidence utterly irrecon cilable with any other than the view given. In all such ease! the court must be governed by the weight of evidence, aftei placing upon it all the most charitable construction for the witnesses. Nor have I so much doubt on which side this is, as tc think it proper to send the case down for a trial at law. Indeed, the evidence is all here, and I feel that I should meet it and decide upon it. The conclusion to which I come is, that the complainant has failed to show his right in the stream in ques tion, as an ancient water-course. That whatever might have been the original course of this water, there has elapsed a period of more than twenty years, during which it has been detained on the farms above, and upon which a grant may be presumed.
The term of twenty years, in New-Jersey, limits the action if ejectment, and bars the right of entry on lands. The same principle applies to the present case. The evidence, even upon the complainant’s side, would leave much doubt upon this part of the case; for many of the witnesses, and particularly Aaron Myers, Frederick Medagh, "William II. Lane, Adam Rinehart, lohn Late, Luther C. Carter, Jacob Myers, John Parke, and John Scott, all confine the running of the water over the turnpike, to freshets. Added to these, the evidence of the defend *248 ant is entirely satisfactoy, and must be so, I think, to any impartial mind, of the true state of the facts. These witnesses, many of them, were the former owners and occupants of the farms now belonging to these parties; men that ploughed and reaped on the very spot now called the water-course.
Colonel William klcCullogli formerly owned those farms, and that more than forty years ago; his son, William B. McCul logh, lived there with his father, and was often over the land; Captain Henry, forty years ago, lived for twelve years on the defendant’s farm; John Skinner lived two years on the com plainant’s place, twenty-six years ago; Abraham Woolston haf known those farms since seventeen hundred and eighty-eight James Groff lived on defendant’s farm twenty-nine years ago; John Eisler worked the defendant’s farm, fifty years ago; William Hazlett worked for cajitain Henry, on his place, thirty-five years ago; William M. Oreveling lived on complainant’s place in eighteen hundred and seventeen, and continued four years; Imla Drake lived on complainant’s place five years, thirty years ago; Benjamin Beigle owned the Beigle farm in eighteen hundred and twenty-nine; and Peter Wyer lived on complainant’s place for ten years, and left it only eight years ago. Such witnesses ought, surely, to know what was the condition of this water, and from the venerable and excellent character of some of them, ought to have our fullest credit and confidence. They, one and all, testify that there never was, to their knowledge, any stream of water running across the Spruce Bun turnpike, on to the defendant’s land, except in times of freshet. They go further, many, if not all of them, and declare, that along the place where the supposed water-course is, they raised grain, and regularly ploughed and reaped. The water is stated to have sunk on Wyer’s farm, and not to have descended to any of the farms below. They further say, that there was no watering place formerly where complainant now has one, but that the cattle on both the complainants and defendant’s farms were watered near the complainant’s house, where there is still a good supply of water. It will be perceived *249 Jiat this evidence covers a period of more than thirty years, in which the water never run, except in freshets, on to the defend¿nt’s iand, and down to about eight years last past. There are many other equally respectable witnesses to the same purport, but these are selected as having superior means of knowledge. A man that has lived on and worked a place, has much greater opportunities of knowing every thing that appertains to it, than a mere passer by. The evidence of judge Robeson, who owns the turnpike, is also in accordance with this view. Besides, there is the positive testimony of James Yannata, and the deposition of Berlin Metier, corroborating the defendants answer, that in eighteen hundred and thirty-two they assisted in digging the ditch, through which the water has since run on to the complainant’s land.
This is the commencement, as I think, from the whole evidence, at any rate for the last forty or fifty years, of any regular stream passing on the complainant’s land. This can confer no right on the complainant, unless it had continued for a period of twenty years. He had no right to turn the water there without the complainant’s consent, and the defendant exposed tiimself to an action for so doing; but I can see no principle of law that can prevent his taking it away again, and turning it in any direction, at any time within the term of twenty years. I cannot fail to remark, that much of the confusion in the testimony, has appeared to me to arise from two causes, in not distinguishing whether, when the water run, it -was a time of freshet or not, and from the fact that water did run, and more formerly than now, from springs on this same lot of the defendant’s, to the complainant, and to this same spot along the partition fence.
There are one or two other suggestions in the case, that I should notice.
The water is said to be of very great importance to the complainant, and none to the defendant. This, it is obvious, if true, cannot enter into the decision; the right must be settled irrespective of the wants of the parties. I confess, that if I felt *250 myself in the position of a mediator, so great do I consider the complainant incommoded by the loss of this water, I would strenuously urge upon the defendant, the propriety and justice, as among neighbors, of allowing a portion of it still to run to-the complainant’s watering place. It is my duty to settle the' rights, and leave subject of accommodation to the parties themselves.
The complainant is charged with having improperly used che process of this court, by causing the water to be turned from the new ditch into the old channel, on the very day the' sheriff came down, and immediately thereafter serving the injunction. The evidence gives color to such a suspicion. From the character of the complainant, I cannot believe, if it was-so, he was actuated by any other belief, than that he might law fully do it. To guard against any such course for the future,. I must express my decided disapprobation of it, and my present conviction, that if made known, I should have felt constrained not only to correct the evil, but to dissolve the injunction absolutely and entirely.
As to costs, I have concluded, after some hesitation, to let each party pay his own. There are two reasons which induce me to this course; one is, that the defendant may be said to< have occasioned this controversy, by leading the water, many years ago, on to the complainant’s land, and thereby prompted him to make his new arrangements for watering his cattle; the other is, the great and unnecessary expense of witnesses, so exorbitant on both sides, as to make me desire, in any result, that each party should pay for his own, and indeed, I doubt the-propriety of charging it against the adversary. There have-been examined between one hundred and thirty and one hundred and forty witnesses, when a much smaller number, and perhaps a very few, well selected, would have disclosed the true nature of the case. The bill must, therefore, be dismissed, but without costs.
Decree accordingly.
Cited in Holsman v. Boil’g Spring Bleach’g Co. 1 McCar. 343; Veghte v. Raritan, Water Power Co. 4 C. E. Gr. 157; Carlisle v. Cooper, 6 C. E. Gr. 580; Duncan v. Hayes & Greenwood, 7 C. E. Gr. 27; Bowerly v. Speer, 2 Vr. 354; Horner v. Stilwell, 6 Vr. 314.